First question I have is why is this a sealed appellee and a sealed appellant here because you're the appellant and your client's name was in the record in the district court and sealed appellee of course is the U.S. so I don't understand. The case is sealed at this stage in order to protect whatever privacy interest she may have. Did you just ask for this in the court of appeals and not in the district court? I don't know. Was it all sealed in the district court too? The initial motion was sealed in the district court. I don't know if subsequently. I just wondered. It seems sort of strange. We're getting so many things lately that are sealed and most of them don't make much sense. I appreciate that input that will help us make sure that we're doing that in the district court, Your Honor. I think I speak for both parties today on the basis of the representation in the brief when I say I hope there will come a day when being diagnosed with a mental illness is no more damaging to a person than diagnosis with a broken arm. But unfortunately that day is not yet here. And for that reason a proceeding that declares a person mentally ill and forwards them to a medical ward for treatment is still one that adjudicates an interest more valuable than mere money. And that is so even if no additional increment of incarceration is at stake. The appropriate standard of proof for such cases where a party has an interest which is more precious than money is clear and convincing evidence. Let me ask you, did the district court, I mean you did preserve this issue in the district court? Yes, Your Honor. Right, because obviously Judge McBride appointed you to represent her. So did he rule on the constitutionality? He said that the finding was made by a preponderance of the evidence. Well, I know that, but I mean he didn't directly address these three Supreme Court cases and all that. Were they briefed to him? No, there was an oral argument that it was insufficient to find it by a preponderance of the evidence. I will point out that Judge McBride did ask trial counsel from our office to be brief in his argument for why there shouldn't be a commitment. I think read in that light, the claim was adequately presented to him. Well, I mean did you even cite the three Supreme Court cases? There was no written submission from us. Well, I just want to, because Judge McBride is pretty meticulous and I just wondered that, all right. But there is a record of that. There is a transcript of that hearing. There is. I can give you a cite if that's helpful when it was preserved. Well, they're not arguing that it's not preserved, but it, sir, is not very preserved. Well, I mean it's adequate for the judge to consider and consider the issue before him and to recognize that there is a mistake if preponderance is inadequate. Well, excuse me, but I mean just for the sake of argument, because we're not here on any facts that are in dispute, correct? You're not challenging any of the facts about the person's diagnosis or the treatment that was necessary, the extent of treatment that's been given already? You're not disputing any of that? There's no sufficiency challenge. There may be differences or different facts we want to highlight for the purposes of court. Well, and I'll let you do your argument in just a second, but again, I mean, you know, for your person just to stand up and say we think it ought to be clear and convincing and the judge looks at the statute and the statute says preponderance. I mean, you're not telling him about the other provisions of the statute. You're not telling him about the three Supreme Court cases that preceded when the statute was passed in that manner. Well, there was a statement that it's unconstitutional. Okay. So at a minimum, there is a cite to the 2013 sealed case, which adjudicates the issue as well, before this court. So that's a matter that could be referenced. And I would ask the court please to consider that preservation in light of Judge McBride's request to please be brief in the preservation of the issue. Okay. So . . . I would assume that under public defender regulations, whatever, this falls under the type of cases that you can be appointed to. I mean, is this a civil commitment? Is this a . . . it's not a criminal representing an indigent defendant in a criminal case, but I would guess it's quasi-criminal because she is serving some time, so . . . She's serving some time. It was a direct appointment and was cited under 3006A. It's a civil case. And the statute contemplates counsel clearly, so whether it's us or a private attorney, I don't know if the statute . . . Go ahead. I just was curious about that. Go ahead. So I would ask the court to consider a defendant. The most heavily pressed argument by the government for why preponderance of the evidence is satisfactory is that there is no additional increment of incarceration that occurs when the defendant already in a prison is moved to a mental ward of a hospital. I mean, the mental ward of the prison. But I would ask the court to consider a — what the appropriate standard of proof would be if a free person, not in a prison, were subjected to, first, a declaratory judgment that he or she is mentally ill and in need of treatment. Well, isn't that what the Supreme Court dealt with in Addington? Well, in Addington, the person was to be committed. Or? In Addington, the person was to be committed as well. So it's not merely a declaratory action. So . . . All right. So I'm just saying that I don't want to compare the case to that, which does have another increment of liberty deprivation. But I would submit that even if it were merely a declaratory action, because mental illness is stigmatized in our society, it is an interest more precious than money. And for that reason, even if there were no additional increment of imprisonment, the appropriate standard would be clear and convincing evidence. And this is not merely a declaratory action. This also authorizes coercive treatment, not medication, but treatment. And it can serve as evidence of a subsequent — in a subsequent 4246 hearing or in an precedent that the person has been already declared to be mentally ill and in need of treatment. And so I think that those interests, even though they don't directly increase the amount of incarceration at issue, serve to impinge on liberty interests that justify clear and convincing evidence. I will . . . Yes, Your Honor. Yes, that's the — it's where VTAC has cited that there's a distinct liberty interest that's associated with that in issue 2, of course. There's also a significant risk of erroneous commitment at the preponderance standard. The decisionmaker is under 4245 is a judge, not a neutral psychiatrist. Judges get to see a wide range of human experience, but do not have particular psychiatric training. And it is not too much to ask, therefore, that they be sure that a person is indeed mentally ill before they declare them to be so. There are three other reasons to be worried about the risk of error. First, as Addington points out, mental illness can be a very subjective enterprise. And VTAC also recognizes an inherent risk of error in prison commitment determinations. Second, prison is a stressful environment. People probably do not behave the same in prison as they would in the free world. They may exhibit paranoia, aggression, delusional thinking that is not typical of the way they would act in the free world. And finally, we have to look at the incentives of the prison. When somebody is disruptive, it is not hard to imagine that a prison may have an interest in controlling them and that that may color their view of the medical necessity of moving them to a hospital. Some of that goes to forced treatment, though, which is not an issue here. Well, forced treatment is an issue. Forced medication is not. Well, forced medication is not an issue here. That's true. It does make it easier to obtain forced medication if the person is in. Yeah, but you've got to go back to court for that, don't you? You have to have an administrative hearing. When a judge is supervising someone on probation or supervised release, what standard is used on special conditions that the judge sets on that person for drug treatment or things of that nature? Does the judge just get a report from the probation office and says, here's a special condition of your probation? What is the difference? I know that here the person is being put in an institution as opposed to you have to go to drug rehab twice a week or report here or report there. What is the difference between that? Because here the person is sort of still under court supervision because they have been put in an institution to serve time. The standard for that is no greater impingement of liberty than is necessary. And that's Ferguson, I think it's the United States v. Ferguson is the case that addresses that statute. There isn't a formal delineation between preponderance and clear and convincing evidence under those circumstances. The difference, I think, is that when a person is in prison, there are other means to control their behavior. They don't pose a threat to society outside of the prison. And so there is a special reason for concern about the behavior of people who have been convicted of a crime and are still on supervision, haven't proven that they're able to live in society when they're outside of the prison. So even if that were a preponderance of the evidence or the appropriate standard for that, then I would say that this is distinguishable. What's the likelihood of harmless error here? It seems to me pretty large. In other words, even if there's no reason for us to set something up for your cert petition if it's clearly harmless error. I would point to two facts that could give a reasonable judge pause at the clear and convincing evidence standard. The first is that the appellant has no record of utilizing mental health care or a diagnosis outside of prison. And so the government's theory then is that. So it was just all made up that she lost 50 pounds because she said her food was contaminated and she was smearing stuff on the prison walls and that she was, I believe it was delusional. I certainly wouldn't say it was all made up. A judge could have pause about how to interpret those facts, whether smearing is. Urine. She wasn't in administrative segregation. She was back and forth between them. I mean, I think the M3 unit at Carswell was similar to administrative segregation. But that's after she was transferred for psychiatric care, right? That's right. Okay. But when she started exhibiting these behaviors, she was in Connecticut. She was. She was. And when she was medicated, she didn't exhibit the behaviors. That's true. She also, there was also a year in which, and this is the second fact I point to, is that there's also a year when she functioned without drugs and didn't exhibit the behavior. So I'm not here to make a sufficiency claim. And the important point on the standard of review is if this is constitutional error, then under Chapman it has to be harmless beyond a reasonable doubt. Well, this isn't a criminal issue. This is a civil issue, though, as Judge Prado pointed out. It is. I'm not aware of a case that limits Chapman to criminal error. How do we get this in the line of cases that say that the penitentiary, the warden, they have some responsibility for the safety of inmates, and if this woman is suffering from some sort of mental illness, wouldn't the warden and the present system have some sort of responsibility for her safety and possibly the safety of others to see to it that she got some sort of treatment? When the issue is committed to a judge, then it is the judge's responsibility to balance that interest against her liberty interests. And she is eligible for forced medication even if she's not committed, emergency medication, and that's what happened in this case. So there are alternatives. I see that I'm out of time. I'd be happy to sit down unless the Court has other questions. You have time for rebuttals. Thank you. All right. Mr. Stoltz. Thank you. May it please the Court. Can you shed any light on why this is sealed? Yes, Your Honor. The entire case file was sealed in the district court. So if you go to PACER, this case will not come up on PACER. So I believe, and when we initially file these cases, we typically include a request to be filed under seal with respect to the medical records because there's essentially medical records of the respondent. Now, I don't know why the case is sealed in the style it is on appeal. We never, and to my knowledge, there's no order for sealing on appeal from the Fifth Circuit or anything like that. I think that's just something that is carried through. But the case is under seal in the district court. And I think typically in these cases, you know, we will, obviously the name is in the record, the record is not public, and then the opinion comes out. It doesn't actually name the individual. It just refers to the inmate. And to a few of the other points that are raised before I get into my argument, Judge Prado, 18 U.S.C. 4247D is a specific provision in this statutory scheme that basically allows for appointment of the federal public defender in these cases. So that's why the federal public defender is here. And Judge Jones, you also asked about the, how this issue was raised in the district court. Page 26 of the record reflects that during the hearing, counsel for the inmate did make a speaking objection stating that there was a due process issue with the fact that this commitment was allowed to go forward on a preponderance standard. I don't believe counsel actually suggested what the alternative should be. I don't think there was any specific argument about that. We're not arguing that the issue is waived. We believe that that was sufficient. I think that if a motion of some sort had been filed, Judge McBride likely would have ordered a response from us, and the issue could have been briefed and been, you know, the subject of a written order, and that would have brought out the Supreme Court cases and all that. But because of the matter that was raised just at the hearing, that didn't occur. So that explains, I think, why the matter is in the posture it's in. Now, Section 4245 provides a wide range of procedural safeguards for inmates who are subject to civil commitment under that statute. This includes notice of the proceeding against the inmate, a right to a hearing where the inmate may testify, the inmate may subpoena and call witnesses, and the inmate may cross-examine witnesses against the inmate. There's a right to counsel, including the appointed counsel that we've discussed. And there's also the right to an independent decision maker in the form of an Article III district judge who applies the preponderance of the evidence standard that's set forth in the statute. Now, these procedures, including the preponderance of the evidence standard applied by the Article III judge, not only meet but actually exceed the constitutional minimum as interpreted by the Supreme Court and as required by the Due Process Clause of the Constitution. So this Court should decline to find that Section 4245, a statute that's been on the books for something like 30 years, this Court should decline to find that that statute is unconstitutional and instead affirm the commitment order issued by the district court. Could we do so on harmless error? I believe, yes, Judge Marksdale, certainly. And to the issue of whether Chapman applies or not, my understanding is that Chapman is in a criminal context. This is a civil case. If you look at the sealed appellee No. 1 versus sealed appellant No. 1 case that's cited in the government's brief from just a year or two ago, a similar case. In that case, the Court went the harmless error route, and my read of that opinion is it did not apply Chapman. It simply applied a harmless error standard like you would see in a civil case for anything else. And certainly I think under any conceivable standard, the evidence in this case was overwhelming. The only witness was the psychiatrist who submitted a report. But the woman was present, right? Correct. The woman was present at the hearing, and the transcript reflects it. I noticed something about her having been a voodoo practitioner. I believe there's some reference to that in the brief. Was there any attempt to explain any of her behavior in terms of voodoo ritual? The only explanation I'm aware of is during the hearing, while the psychiatrist was being cross-examined by the inmate's lawyer, there was a reference to whether or not she was allowing them to draw blood. And I think it was because it was explained as she might have been a Jehovah's Witness. And that's the only thing I recall about. I've never heard of them doing voodoo. Yes. Now, she has a Haitian background. I didn't make this up. I mean, the word was definitely in the record. That's why I'm not sure. I guess I'm not. Okay. Well, obviously it didn't factor in. I don't think it factored in, particularly given a lot of the other. It wasn't all voodoo-centric to my understanding, or really any of it. Back to your point, Judge Barksdale, I think on harmless error analysis, you have the unrebutted report and testimony of the psychiatrist. The inmate actually retained her own doctor, and it's in the record at page 132 and 133, and then again at 144. The inmate had retained a doctor and listed that doctor on the witness as somebody who had examined the inmate on the inmate's own behalf, but then the inmate declined to call that doctor at the hearing. So the testimony of the psychiatrist was essentially unrebutted. And even at the hearing, if you read the closing remarks from the inmate's lawyer, he's very careful, I think, and he says, and this is at page 25 and 27, his argument was that the record permits me to argue that she, the inmate, feels that she does not have a mental condition. Counsel did not even really argue that she does not, in fact, have a mental illness. He said that she feels she does not have it. So I think the record is overwhelmingly clear that there was a mental illness, and no matter what standard is applied, she was properly committed. Now, back to the issue of what standards should apply, I'd like to take a look at section 4245 and sort of the big picture and the context of where that statute came from. Page 11 of our brief, we discuss how the statute was passed in 1984 as part of the Insanity Defense Reform Act of 1984, which was a multifaceted statute that dealt with issues of mental illness in all aspects of the criminal justice system, federal criminal justice system, from pre-trial people who are maybe not competent to, like this case, to post-conviction situation where somebody's in custody. And then also the statute deals with people who are due to be released from custody. So section 4245's piece of this is the time period where a person is serving a term of imprisonment and if they, during that time of imprisonment, they display mental illness that requires treatment. And so the backdrop of this statute was the Vidick, I believe, Vidick or Vitek v. Jones decision of 1980, which concerned a similar transfer within a penal system. It was a Nebraska state penal system, and they basically had a system where a doctor in the prison could unilaterally transfer an inmate out of the general population into a mental facility. So it was a unilateral transfer just by the doctor. The Supreme Court said there's a liberty interest at stake here due to this transfer, even though the person's already in jail, and we don't dispute there is a liberty interest. And that liberty interest requires that there should be a certain due process, a certain process be given. And the Supreme Court explained you need notice, you need a hearing, the person has the right to testify, to call their own witnesses, to examine people who are testifying against them, and you need an independent decision maker. And this is all in that 1980 decision of the Supreme Court. Now, the Supreme Court did not require any kind of court proceeding, though, and I think that decision is clear that this can be an administrative proceeding. The Supreme Court said that the independent decision maker can be somebody just on the prison staff. It can be the warden or somebody in the prison administration. That decision also does not require any specific standard of proof. It says something to the effect that the decision maker has to have reasons, but there's no clear and convincing, there's nothing along that line. So if you look at the backdrop of what the Supreme Court had done at the time Congress passed the statute, I think it's clear that Congress went well above and beyond what was constitutionally required. Instead of an administrative proceeding, Congress created a judicial proceeding in district court. Instead of a prison administrator making the decision, Congress empowered an Article III judge to do it. And instead of the decision maker merely needing to have some reasons, Congress gave this specific preponderance of the evidence standard. So I think that, again, Congress went above and beyond what was required of it. There certainly was no due process or constitutional violation by Congress when it selected it. Within the Act there are other standards for different classes of persons and civil commitment. Am I correct that when the prisoner, when her prison term ends, if she's civilly confined, so let's assume that the appellant is committed to the, is sent to the mental ward and her sentence ends. When her sentence ends, does she get a new hearing where you have to prove under the statute by clear and convincing evidence that she should be kept confined for mental reasons as opposed to being set free at the end of her term? That's correct, although I would say it's more than that. It's not even that there has to be a hearing. Under the statute, the commitment expires and the inmate is due to be released and is released at the later of either, I'm sorry, at the earlier of either when she recovers or when her term of imprisonment expires. So when the term of imprisonment expires, if she's still in the mental ward within the prison system, she's released. Now, the government has the option, if they believe that the facts warrant it, to institute a new proceeding under section 4246, for example, which does require clear and convincing evidence. But that's only if she's dangerous, right? Correct, and in this case, the psychiatrist testified at the hearing that this inmate, as things stand now, is not considered a candidate for a 4246 commitment. She's sort of a danger and has trouble taking care of herself, but she has not manifested outward danger to others. So at this time, no, there is no 4246. Where is she now? She's at the Federal Medical Center in Carswell. She's on the Carswell prison ground, and they have essentially three mental health units, from the lockdown unit, which is sort of the most restrictive, to what's called the outpatient unit, which is the least restrictive.  I want to mention briefly the Addington case, because they rely on the Addington case, which is, again, it predates the statute, and I believe, Judge Jones, you referred to the fact that these Supreme Court cases were already on the books. Addington, we believe, is distinguishable because it dealt with a free citizen rather than somebody who is presently incarcerated. So the liberty interest is not the same. And then the Jones v. United States case, which came in 1983, which was the insanity equity, the Supreme Court was clear that not all people who are civilly committed require the higher Addington standard. In the Jones case, they said there's important differences between the class of potential civil commitment candidates that were in Addington, which is the public at large, versus these other cases, like Jones, where it's somebody who's in the system already, although granted on different grounds, on insanity grounds. So we think the same is true here, though. There are differences, there are meaningful differences between a presently incarcerated inmate and a member of the public. And my last point about Addington is... Of course, just for purpose of conversation, the Jones decision was based on the fact that the person was found not guilty by reason of insanity. The insanity was established, at least by a jury. I agree that's correct, Your Honor. And the Supreme Court said, you know, there are distinctions. And I just think Jones stands for the proposition that there are distinctions. And another distinction is if the person is presently incarcerated. The defendant has to request that issue. That's correct. That's correct. I agree. I agree. Yeah, I think in Jones, the Supreme Court was willing to say, look, they've already requested to be found mentally ill, so we're not so much worried about it. At the same time, though, they were otherwise, their liberty interest was a lot greater, because they were otherwise due for release. Here, it's a little bit different, because granted, she has not said that she's mentally ill, but at the same time, her liberty interest is a lot lower. So I think it's a balancing, and this is a permissible way for Congress to balance it, which they've done in this statute, which, as you mentioned, has multiple different segments with multiple different levels. And the last thing about Addington is, when the Supreme Court decided the Vidic case, or Vitek case, Addington was only a year old at that time. They cite Addington in that case for the fact that there's a liberty interest in having to go to a mental ward. But they, I think very notably, they did not import the same procedure from Addington into the prison situation. Even though Addington was on the books, they did not require the same hearing before a judicial officer with clear and convincing evidence. So again, I think the proof is strong that the constitutional floor was well exceeded by what Congress did here. And again, this thing's been on the books for 30 years. It's not been found to be unconstitutional. We don't think that there was any problem with the way Congress balanced these issues and made these determinations as part of this overall scheme. I'm just curious, how does it work in reverse? If she is found by the doctors to now be competent, does she get another hearing? If she contests it and says, no, I need to stay in a hospital atmosphere, and the doctors say, no, you've got to go back to the penitentiary because you're cured, do we have another issue there, or what process is in place? The prison or the hospital is required to file annual reports that update on what her condition is like. I believe at any time after the first six months of commitment, she has the option to petition to be released from the commitment if she believes she's improved. I'm not aware of, you know, I think also if the doctors make a decision that she's improved, they have the right to sort of unilaterally release her from the commitment. She went back once. Didn't she? She did transfer back once. At the time, the first time she came, she was not under a commitment. And they basically believed that she had recovered sufficiently that she could go back, yes. So that's always an option. I've never heard of one who didn't want to leave but where they wanted them to leave, so I don't know. But I assume there's a way to deal with that. So we'll understand this record. Just very quickly tell us, as I understand it, the only witness at the hearing, and I assume that hearing was before Judge McBride, was the written findings of a psychiatrist? No. Well, the psychiatrist appeared in person at the hearing. Now, the psychiatrist had previously prepared a mental health evaluation that when we initially filed the case, we filed our petition. Essentially, you file a motion or a petition asking for a hearing. We attached that as an exhibit to our motion just right up at the front of the case. When the psychiatrist appeared at the hearing, we also included that attachment again, that mental health evaluation, the written evaluation, as an exhibit. And Judge McBride essentially, rather than us drawing out everything in that report on direct, he asked her if it was accurate. We introduced it in evidence and that basically allowed for us not to have to draw all this out again on direct. So we asked her a few questions. She sort of affirmed what was in the report, what the inmate's current status was, and then was subjected to cross-examination and some examination from the court. That was the only witness we called. And then in the inmate's turn, the inmate did not call any witnesses. So there was one witness. There's three exhibits. One exhibit is the mental health evaluation. One exhibit is some medical forms, and the last exhibit is a timeline that the doctor prepared showing the bouncing back and forth back to other facilities into this one. I do want to address just real briefly the 4246 issue because I believe I heard from counsel that this is creating a precedent for 4246. It's a totally separate test. It's a test of dangerousness, as Judge Jones says, so we don't see it as a precedent issue, and the doctor has already said that's not where this is going. There was also a reference in one of the briefs from the inmate to an argument to the effect of, well, why does the Bureau of Prisons need to do this in court? They can just do it administratively. And the record site or the regulation on that is 28 CFR 549.45, and if you look at that, it's a misreading of the regulation. When an inmate is imprisoned, pursuant to a term of imprisonment, they have to go through the statute that Congress has created. There's a separate regulatory scheme for other people who might be in BOP custody, for example, like material witnesses or people who have not been sentenced, and so therefore they're not part of the statute. If those people are in BOP custody and they need a civil commitment, there's an administrative process that basically is a lesser amount of protection because it's purely administrative. That's what that process is. But it's two separate tracks. This inmate is not eligible for the administrative track. With that, if there are no more questions, I would ask the Court to affirm. I don't think so. Thank you. Thank you. Mr. Page. Two quick points I'd like to make, unless the Court would like to hear something else from me. The first is that although I'm happy to learn that Appellant is not a candidate currently for 4246, I'd just point out that this — the possibility that 4245 hearings could influence a 4246 hearing is a reason to have a higher standard of proof in a 4245 hearing. The fact that it's not an issue in this particular case shouldn't affect what rule comes out of this case about what the constitutional standard of proof is appropriate for those cases. The second point I wanted to make is that VITEC or VTEC, I guess we haven't figured out how to say that yet, doesn't say that clear and convincing evidence is required, but it also doesn't say that preponderance is adequate. So for that reason, we need to resolve that issue here by comparing the current situation, 4245 hearings, to court precedents in Addington and Jones. And I would submit that 4245 hearings are more like Addington than Jones, because in Jones there is, as Judge Barksdale pointed out, a lesser risk of error in the finding of mental illness because the defendant has joined and affirmatively asserted their own insanity, and a link between their mental illness and the crime. Addington is not square either because it deals with people who are not in prison, but it's more like this in that it says that the standard is the appropriate standard for determining when you need clear and convincing evidence is, is this a proceeding that adjudicates interests that are more than mere money? And incarceration or no, the stigmatizing finding of mental illness is more than mere money. But you're not attributing much to the balancing. In other words, the government interest. Well, the government has some alternatives to a finding of mental illness. The first one is that unlike a free citizen who is committed, the government surrounds the defendant, surrounds the person that is to be committed with its own employees, and is able to document their life. What about, you know, if people, to take an extreme example, or perhaps this one, suppose this woman did not require administrative segregation, so she's either in, so she's in some kind of cell with another person, and she's exhibiting these bizarre behaviors. What is that going to do to the other person? What is that going to do to institutional security? What do you do if they start yelling and screaming in the middle of the night? In other words, the institution has serious interests also here. I don't mean to discount them. I will point out that they have emergency medication as an alternative, even in the absence of commitment, and it was used here twice when there is a grave and imminent threat. I think it's better for them to be tased or given a stuccovalium in their mouth rather than to voluntarily submit to medication that has a longer-term effect. Well, I don't know if voluntarily submitting to medication is an alternative. Well, she's taking voluntary medication, and she's better, right? Even though she has apparently occasionally rejected it also. I'm just saying if you're looking at the best interests of the client. I appreciate that, Your Honor. But the emergency medicine is for a limited amount of time and can respond to immediate threats in that circumstance. So I would also say the prison does have a grave interest, but they're able to meet that interest in court by getting to a clear and convincing evidence standard because they are largely in control of the information that they gather about the defendant. Thank you. Okay. Thank you very much. The court will be in recess until 9 o'clock tomorrow morning.